IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IMAGES OF THE WORLD, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  04 C 7002 |
| v. | ) |
| CONTINENTAL AMERICAN | ) HONORABLE DAVID H. COAR |
| INDUSTRIES, INC. and CONWEST | ) |
| RESOURCES, INC., d/b/a FALCON | ) |
| STUDIOS, JOCKS STUDIOS, MUSTANG | ) |
| STUDIOS and THE FALCON | ) |
| INTERNATIONAL COLLECTION, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Images of the World, Inc. ("Plaintiff" or "Images"), is an Illinois corporation with its principal place of business in Chicago, Illinois. (Pl. Compl. ¶ 1). Defendants Continental American Industries, Inc. ("Continental") and ConWest Resources, Inc. ("ConWest" or "Defendant") (collectively "Defendants"), d/b/a Falcon Studios, Jocks Studios, Mustang Studios, and the Falcon International Collection, are both California corporations with their principal place of business in California. (Pl. Comp. ¶ 2). Defendants move to dismiss for lack of personal jurisdiction. Alternatively, should this Court find personal jurisdiction, Defendants move to dismiss for improper venue, or to transfer this action to the Northern District of California for *forum non conveniens*. For the reasons set forth below, Defendants' motion to

dismiss for lack of personal jurisdiction, or alternatively, transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Northern District of California, is DENIED in its entirety.

**FACTUAL BACKGROUND**

Plaintiff is a producer, manufacturer, and retailer of adult films. (See, Steven Toushin ("Toushin") Declaration, ¶4). In 1987, Toushin, the president and sole shareholder of Images, purchased the copyrights to the films "Dangerous," "Getting It," "A Few Good Men," and "Games" (hereinafter referred to as "the four films") (Toushin Declaration, ¶5). In 1989, Toushin assigned all his individual rights to the four films to Images. (Id. at ¶6).

For over fifteen years, Defendants have been in the business of producing adult entertainment that is distributed through outside distributors, mail order and the Internet. (Def. Ex. 1; Terry Mahaffey ("Mahaffey") Declaration, ¶5).[1] In addition, Defendants also distribute videos produced or manufactured by other production companies. (Id. at ¶6). Defendants, through mail order and via the Internet, have openly offered the four films for sale. (Id. at ¶26).

In 1991, Images discovered that Continental was selling the four films. (Pl. Compl., ¶6). Images contacted Continental regarding the unauthorized sales, and Continental conceded that the copyrights to the four films were owned by Images. (Toushin Declaration, ¶10). Continental agreed to cease and desist its infringing activity, surrender to Images the masters of the four films, destroy all the copies of the copyrighted works, and pay Images $4000 (the approximate income earned by Continental by selling the four films). Id. Images refrained from filing suit against Continental as a result of Continental's agreement to cease and desist the infringing activity. (Pl. Compl., ¶29).

---

[1] Mahaffey is Principal of Conwest.

In 2001, Plaintiff discovered that Defendants' website was offering the four films for sale. (Pl. Compl., ¶9). Since the matter had been addressed in 1991, Plaintiff was under the impression that Defendants had discontinued the duplication and sale of the four films. (Toushin Declaration, ¶14). Plaintiff purchased the four films through the website to determine whether they were the same films to which Images owns the copyright. (Pl. Compl., ¶10). Upon arrival, Plaintiff learned that they were the four films, and furthermore, that Defendants had attached a notice to the copies claiming copyrights in each of the films. (Pl. Compl., ¶11).

Plaintiff contends that it is the owner of the copyrights for each of the four films in question. (Pl. Compl. ¶5). Plaintiff's suit contains three counts. Count I alleges copyright infringement, in violation of 17 U.S.C. §101, *et seq.* Count II is a claim against Defendants for false designation of origin and unfair competition (15 U.S.C. § 1125(a)). Count III is a claim of common law fraud against Continental.

**DISCUSSION**

Defendants move to dismiss for lack of personal jurisdiction. Defendants contend that they lack the continuous and systematic contacts with Illinois that would confer general jurisdiction. Moreover, Defendants maintain that this Court does not have specific jurisdiction over Defendants. Should this Court assert personal jurisdiction, Defendants move to dismiss for improper venue, or alternatively, transfer this action to the Northern District of California for *forum non conveniens*. The Court will address each ground for dismissal in turn.

## I. Motion To Dismiss For Lack of Personal Jurisdiction

Defendants contend that Images' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction, Plaintiff has the burden of making a prima facie case for personal jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997) (internal citations omitted). When reviewing a motion to dismiss, all jurisdictional allegations are taken to be true. Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F. Supp. 2d 824, 833 (N.D. Ill. May 21, 2001)(citing Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)). If there are any conflicts between the parties' affidavits, they will be resolved in favor of the plaintiff. Id.

### A. General Jurisdiction

General jurisdiction is appropriate when the defendant has engaged in continuous and systematic activities in the forum state. RAR, 107 F.3d at 1277. Neither party alleges that Defendants' activities in Illinois are continuous and systematic. Images concedes that if personal jurisdiction exists in this case, it must be specific.

### B. Specific Jurisdiction

Specific jurisdiction is proper when the cause of action arises out of or is related to the defendant's contacts with the forum. RAR, 107 F.3d at 1277. In order to make a prima facie case for specific jurisdiction, a plaintiff must show that: (1) the defendant is amenable to service of process; and (2) bringing the defendant into court is consistent with due process. LFG, L.L.C. v. Zapata Corp., 78 F. Supp.2d 731, 734. The Court will discuss each of the two factors necessary for specific jurisdiction in turn.

*1. Amenability to Service*

Fed. R. Civ. P. 4(k) provides:

service is sufficient to establish personal jurisdiction over the defendant either, first, when such service is provided for by a United States statute, or second, when the defendant could be subjected to the jurisdiction of a court in the forum state through that state's long arm statute

See Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F.Supp.2d 824, 834 (N.D. Ill. 2000). "The Illinois long-arm statute provides that a defendant is subject to the jurisdiction of its courts as to any of several specified causes of action." Id. ; see also 735 ILCS 5/2-209 (a). The statute also allows Illinois courts to exercise personal jurisdiction to the fullest constitutional limit. 735 ILCS 5/2-209(c). Therefore, the requirements of the Illinois long-arm statute may be satisfied by inquiring as to whether subjecting the Defendants to the personal jurisdiction of Illinois comports with federal due process standards.

*2. Due Process*

In order for Illinois to assert personal jurisdiction over a foreign defendant, the defendant must have sufficient contacts with Illinois that would provide a fair warning that those contacts may subject the defendant to jurisdiction in Illinois. Burger King v. Rudzewicz, 471 U.S. 462, 472-73 (1985). The types of contacts that constitute fair warning are those that are purposefully directed to the forum state to establish minimum contacts with that state. Id. at 473. Moreover, "[i]f a defendant has purposefully established minimum contacts with the forum State, the nature of the contacts are considered to determine whether assertion of jurisdiction would comport with fair play and substantial justice." International Star Registry of Illinois v. Bowman-Haight

Ventures, Inc., No. 98 C 6823, 1999 U.S. Dist. LEXIS 7009, at *10 (N.D. Ill. May 4, 1999) (internal quotations and citations omitted).

### a. Minimum Contacts Established From Internet Activities

The minimum contacts requirement can be satisfied even if the defendant did not physically enter the forum state. See Burger King, 471 U.S. at 476. Business transactions conducted via mail and wire across state lines circumvents the need for physical presence. Id. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The sliding scale analysis for Internet jurisdiction first set forth in Zippo has been used to determine what level of website interaction subjects a defendant to personal jurisdiction. The Zippo court identified three categories of website activity: (1) where the defendant actively conducts business with residents of a foreign jurisdiction over the Internet; (2) where the defendant operates an interactive website used for exchanging information between the defendant and potential customers; and (3) where the defendant maintains a passive website which provides no further communication between the defendant and website visitors. Zippo, 952 F. Supp. at 1123-1124.

Under the Zippo analysis, personal jurisdiction may be exercised over defendants who fall under the first category by actively conducting business over the Internet. "[W]here a defendant actively conducts business over the Internet and generates revenue through direct commercial transactions with Illinois residents, it is subject to suit in Illinois." Ty, Inc. v. Baby

Me, Inc., No. 00 C 6016, 2001 U.S. Dist. LEXIS 5761 at *12 (N.D. Ill. April 20, 2001) (internal citations omitted).

In the case at hand, Defendants fall under the first category. Defendants operate a website with a high level of interactivity, which enables customers to browse through an online catalog and place orders over the Internet. Defendants do not target or tailor their business to any particular geographical area. Additionally, the website allows all users, including residents of Illinois, to purchase films. International Star, 1999 U.S. Dist. LEXIS 7009 at *5. Defendants profited from Internet users in Illinois who purchased "Dangerous," "Getting It," "A Few Good Men," or "Games" through Defendants' website. That benefit confirms that Defendants purposefully directed its business activities to the State of Illinois. Id. at *17.

Defendants assert that they have not advertised in Illinois, nor have they specifically targeted customers in Illinois. Thus, Defendants argue, any business conducted with Illinois residents has resulted from contacts initiated by Illinois residents who visited Defendants' website. However, Defendants made a repeated and conscious choice to process orders placed by Illinois residents. Defendants knew that processing the orders would lead to sending films to Illinois; an action entirely within the Defendants' control. "When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.'" Zippo, 952 F. Supp. at 1126 (quoting World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). If the Defendants did not want to be subject to personal jurisdiction in Illinois, they could have chosen not to sell films to Illinois residents. Zippo, 952 F. Supp. at 1126-1127.

Defendants argue that the few sales of the four films into Illinois are not enough to establish sufficient minimum contacts. Over the past three years, the four films generated $7,587.31 in sales nationwide. Sales of the four films to Illinois residents contributed $341.98 to the nationwide sales. Defendants' contention that only a small amount of business was conducted does not alter the conclusion that personal jurisdiction is proper. Even a single contact can be sufficient. Defendants may have had relatively few contacts with Illinois, but "it is the quality of contacts, not their number[,] that determine whether they amount to purposeful availment for jurisdiction purposes." International Star, 1999 U.S. Dist. LEXIS 7009 at *20. Contacts can create a substantial connection with a forum state even if they yield little revenue. Zippo, 952 F. Supp. at 1127 (citing CompuServe Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996)).

Defendants' business practice of processing film orders over the Internet demonstrates its intention to conduct business with consumers throughout the United States, including Illinois. See Ty, 2001 U.S. Dist. LEXIS 5761 at *14. Defendants' website is one where business is actively conducted over the Internet, and Defendants sold films to Illinois residents. The exercise of specific personal jurisdiction over Defendants is proper.

### b. Copyright Infringement Claim Arises Out of Internet Activities

The "arising out of" requirement for personal jurisdiction assures that defendants are haled into court as a result of their own purposeful activity in the forum state. Euromarket, 96 F. Supp.2d at 839 (citing Burger King, 471 U.S. at 475). This requirement prevents a finding of personal jurisdiction over a foreign defendant due to the "unilateral activity of another party or third person." Id.

The Illinois long-arm statute authorizes the exercise of personal jurisdiction for torts that are committed in Illinois. International Star, 1999 U.S. Dist. LEXIS 7009 at *18; 735 ILCS 5/2-209 (a)(2). "In determining whether specific jurisdiction exists when a plaintiff's intellectual property rights have been harmed, the Seventh Circuit has given consideration to where the injury is felt." Id. An infringing article sold in the State of Illinois constitutes the commission of a tort in Illinois sufficient to confer jurisdiction under the Illinois long-arm statute. Id. at *18-19.

Images' injury and claim of copyright infringement arose from Defendants' contacts with Illinois. Defendants' business with Illinois residents entails the sale of the films that Images claims infringe its copyrights. When the films are shipped to Illinois and viewed by Illinois residents, the alleged infringement and unfair competition occurs in Illinois. Therefore, the cause of action arises out of Defendants' activities in the forum state.

Defendants' website and business activity within the State of Illinois make it reasonably foreseeable that the Defendants could be brought before an Illinois court. Consequently, the Court has specific jurisdiction over Defendants.

**II. Motion To Dismiss For Improper Venue**

Defendants argue that this case should be dismissed for improper venue because this Court does not have personal jurisdiction over Defendants. Venue is appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

See 28 U.S.C. §1391(b). Subsection (c) provides that a corporation resides in any district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. §1391(c). Venue is appropriate in the Northern District of Illinois when the exercise of personal jurisdiction is proper. Aero Products Int'l v. Intex Corp., No. 02 C 2590, 2002 U.S. Dist. LEXIS 17948 at *25-26 (N.D. Ill. Sept. 19, 2002). In light of this Court's decision regarding the appropriateness of the exercise personal jurisdiction, this Court finds that venue in this district is proper pursuant to 28 U.S.C. §1391.

### III. Motion To Transfer For Forum Non Conveniens

Alternatively, Defendants have moved for this Case to be transferred to the Northern District of California. Pursuant to 28 U.S.C. §1404(a), a court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice." The movant has the burden of showing that the transferee court is clearly more convenient than the transferor court. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir. 1986). Transfer is appropriate when: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. Law Bulletin Publishing Co. v. LRP Publications, Inc., 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). District courts have broad discretion to determine whether transfer is appropriate. Aero, 2002 U.S. Dist. LEXIS 17948 at *26 (citing Heller Financial,Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir.

1989)). This Court has already determined that venue is proper in the Northern District of Illinois. The issues remaining in dispute are whether the convenience of parties and witnesses and the interest of justice weigh in favor of transfer.

### A. Convenience of the Parties and Witnesses

When evaluating the convenience of the parties and witnesses, the court should consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties litigating in the respective forums." Amoco Oil Co. v. Mobil Oil Corp., 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (internal citations omitted). The Court will address each of these five factors in turn.

#### 1. Plaintiff's choice of forum

Plaintiff's choice of forum, particularly when it is Plaintiff's home forum, enjoys substantial deference. Id. (citing Vandeveld v. Christoph, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)). Plaintiff's choice of forum is entitled to less deference when it is not the site of events material to the case. Law Bulletin, 992 F. Supp. at 1017 (citing Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989)).

Illinois is both Images' home forum and chosen forum. Images' claims of copyright infringement, and false designation of origin and unfair competition arose from Defendants' contacts with Illinois. This factor weighs in favor of retention.

#### 2. Situs of material events

Images' injuries resulting from copyright infringement, and false designation of origin and unfair competition, arose in Illinois. Transaction conducted between Images and Continental

and ConWest transpired via telephone, mail or the Internet. Though Illinois is the site where the injury occurred, the Northern District of California is the location where the allegedly illegal duplicating of the four films is taking place. The Court finds that this factor weighs neither in favor of transfer nor retention.

### 3. *Relative ease of access to source of proof*

Images alleges that all of the documents relating to this cause of action are located in Illinois. Moreover, the masters of the copyrighted works are also in Illinois. These masters are heavy and bulky and, therefore, difficult to transport. Defendants argue that the issue of damages in copyright infringement cases is highly dependent on the financial records in the Defendants' possession. These business records are located in the Northern District of California. The Court is satisfied that both parties have the same relative access to evidence. See Law Bulletin, 992 F. Supp. at 1018 (internal citations omitted). This factor weighs neither in favor of transfer nor retention.

### 4. *Convenience of the witnesses*

"The convenience of the witnesses is often viewed as the most important factor in the transfer balance." Law Bulletin, 992 F. Supp. at 1018 (quoting Rose v. Franchetti, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)).

Defendants have identified four potential witnesses. The first witness, Terry Mahaffey, is the Principal of ConWest. Generally, employee-witnesses' convenience is assigned little weight. Law Bulletin, 992 F. Supp. at 1019 ( internal citations omitted). The three other potential witnesses, Steven Scarborough, Stan Loeb, and John Rutherford, are all non-party witnesses. From the descriptions provided to the Court, these three witnesses may be able to offer

information regarding the Defendants' authority to distribute the four films. Since these witnesses reside in the Northern District of California, that forum would be more convenient for these witnesses.

Images has identified one potential witness, David Van Abel, who is a non-party witness. Images intends to call Mr. Van Abel as a witness in the event that Defendants make allegations that Images engaged in unauthorized duplication and sale of Defendants' copyrighted works. Defendants have not yet made a formal allegation against Images. Since this is a speculative allegation, and thus a speculative witness, there is no guarantee that Mr. Van Abel will be called to testify. This witness does not factor into considerations of convenience.

Based on the information concerning witnesses presently before this Court, the Northen District of California appears to be more convenient to non-party witnesses than the Northern District of Illinois. Consequently, this factor weighs in favor of transferring the case to the Northern District of California.

    *5. Convenience of the parties*

When considering the convenience of the parties, "the court should consider their respective residences and their ability to bear the expenses of litigating in a particular forum." Law Bulletin, 992 F. Supp. at 1019 (citing Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership, 807 F. Supp. 470, 474 (N.D. Ill. 1992)).

Images, a small business with five employees, earns an annual income of less than $300,000. The burden of litigating this matter in the Northern District of California would subject Images to substantial financial hardship. Defendants are one of the largest sellers of gay adult films, with annual revenues of around $5,000,000. They currently employ about thirty-six

-13-

employees.  Since Defendant is in a stronger financial position than Images, it would be less burdened than Images if the case was transferred.  This factor weighs in favor of retention.

### B. Interest of Justice

"The 'interest of justice' analysis relates. . .to the efficient functioning of the courts, not to the merits of the underlying dispute."  Coffey, 796 F.2d at 221.  This analysis considers: (1) the speed at which the case will proceed through trial; (2) the court's familiarity with the applicable law; and (3) the relation of the respective forums with the issues in the case and the desirability of resolving controversies in their locale.  Amoco, 90 F. Supp. 2d at 961.

#### 1. Speed at which the case will proceed at trial

The two court management statistics that are the most relevant to effectively evaluating the speed at which the case will proceed at trial are (1) the median months from filing to disposition and (2) the median months from filing to trial.  Amoco, 90 F. Supp. 2d at 962 (citing Vandeveld, 877 F. Supp. at 1169).

The median months from filing to disposition was 5.5 months in the Northern District of Illinois, compared to 10.6 months in the Northern District of California.  (Pl. Resp., Exs. B and C).[2]  The median months from filing to trial was 26 months in the Northern District of Illinois, compared to 30.3 months in the Northern District of California.  *Id.*  These statistics show that the parties would receive a quicker resolution in the Northern District of Illinois than they would in the Northern District of California.  This factor weighs in the favor of retention.

---

[2] All statistics for the Northern District of Illinois and the Northern District of California are from the 2003 reporting period.

*2. Court's familiarity with the applicable law*

This case involves three claims, one of which is governed by state law. Two of Images' claims against Defendants involve federal law. Both the Northern District of Illinois and the Northern District of California are equally capable of adjudicating these issues. The fraud claim will be governed by state common law. An Illinois court would be more familiar with substantive Illinois law. This factor weighs in favor of retention.

*3. Relation of the respective forums with the issues in the case and the desirability of resolving controversies in their locale*

Images contends that since its injury occurred in Illinois, this forum has a stronger interest in redressing a business with its principal place of business in Illinois than the Northern District of California. (Pl. Resp., p. 15). Further, as noted previously by this Court, Plaintiff's cause of action arises from Defendant's contacts with Illinois. This factor weighs in favor of retention.

Based on the comparison between the convenience of the parties and the witnesses, and the interests of justice, the factors weigh in favor of retention. Defendants have not overcome the deference to the Plaintiff's choice of forum. Though Defendants' witnesses will be inconvenienced if it becomes necessary that they travel to Illinois, Defendants have not shown that the overall inconvenience would be less if the case was transferred to the Northern District of California. Lastly, the parties will likely proceed to trial more quickly in the Northern District of Illinois, and an Illinois court has a stronger relation to the claims at issue.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction, or alternatively transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Northern District of California, is DENIED in its entirety.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **August 30, 2005**